

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

September 19, 1990

Honorable Benjamin Euresti, Jr.    Opinion No.  JM-1226
County Attorney
Cameron County Courthouse    Re:   Whether Mexican op-
974 E. Harrison Street    erators of motor vehicles
Brownsville, Texas 78520    used for commercial pur-
poses must obtain Texas
driver's licenses
(RQ-1975)

Dear Mr. Euresti:

Your request concerns the state licensing requirements that must be satisfied prior to driving commercial motor vehicles in Texas. Two state statutes currently regulate the issuance and continuance of driver's licenses whose possession authorizes the holders to drive various motor vehicles in Texas. Those statutes are articles 6687b and 6687b-2, V.T.C.S. Since your request focuses on article 6687b, we first address your questions under that statute.

Section 2(a) of article 6687b provides that unless expressly exempted by the act, no person may drive a motor vehicle on a highway in Texas without a driver's license issued in accordance with the act. You ask whether section 3(e) of article 6687b exempts Mexican commercial truck operators driving Mexican commercial vehicles in Texas from the license requirements of the act.[1] You also ask whether

---

1. We assume for purposes of this opinion that the Mexican commercial drivers are not Texas residents, but are instead Mexican residents who are entitled to the benefit of Mexican laws and treaties. See Attorney General Opinion JM-611 (1986) (concluding article 6687b exempts persons holding valid driver's licenses from other states or countries only if such persons are not Texas residents); see also 37 T.A.C. § 15.1(2) (defining "resident" for driver's licenses purposes as a person domiciled in Texas), 15.1(3) (classifying all others as "nonresidents").

an exemption under section 3(e) is dependent on a reciprocal exemption by Mexico of commercial drivers licensed by Texas.

Section 3(e) of the act exempts from the act's license requirements:

> Any nonresident who is at least eighteen (18) years of age and who has in his immediate possession a valid Class A or Class B driver's license or similar license issued to him by his home state shall not be required to secure such license under this Act, _provided_ the state or country of his residence likewise recognizes such licenses issued by the State of Texas and exempts the holders thereof from securing such licenses from such foreign state or country. The _purpose_ of this section is to extend full _reciprocity_ to citizens of other states and foreign countries which extend like privileges to citizens of the State of Texas. (Emphasis added.)

Possession of either a valid Class A or B license or a valid Class C license, the other motor vehicle license issued under the act, authorizes the use of motor vehicles based on their weight ratings or passenger capacity and thus covers vehicles used for both commercial and noncommercial reasons. V.T.C.S. art. 6687b, § 4A(b)-(d); _see also_ _id._ § 1; V.T.C.S. art. 6701d, § 2(a)-(b) (cited provisions read together define "motor vehicle" for purposes of article 6687b to cover in general vehicles used for the transportation of persons or property by highway). Article 6687b-2 also uses a vehicle classification system that is based in part on weight ratings or passenger capacity. Since you did not present and we are not otherwise in possession of particular facts describing the weight ratings, passenger capacity, or other characteristics of the motor vehicles in issue, we cannot determine whether the licensing provisions of article 6687b or 6687b-2 apply to them. Thus, we first assume that the vehicles are within the scope of the licensing provisions of article 6687b, and later for purposes of our discussion of article 6687b-2, we assume that the vehicles

are within the reach of the licensing provisions of article 6687b-2.[2]

The predecessor of section 3(e), formerly codified as section 3(4), exempted prior to 1947 only residents of other states who held chauffeur's licenses. Acts 1941, 47th Leg., ch. 173, § 3(4), at 247-48. In 1947 the legislature passed House Bill 293 and extended the exemption in section 3(4) to residents of other states who held operator's or commercial operator's licenses and to other nonresidents who possessed operator's, chauffeur's, or commercial operator's licenses or similar licenses from their home governments "provided the State or Country of . . . [their] residence likewise recognizes such licenses issued by the State of Texas and exempts the holders thereof from securing such licenses from such foreign State or Country." Acts 1947, 50th Leg., ch. 108, § 1, at 171. The caption and the emergency clause show that the legislature intended to extend reciprocity to citizens of other states and foreign countries that extended a similar exemption to Texas residents. Id. at 171-72.

Soon after the passage of House Bill 293, this office issued Attorney General Opinion V-980 (1949), which held that this state could automatically suspend the driving privileges of a nonresident holding an out-of-state license who was convicted of an offense under article 6687b and take custody of the nonresident's out-of-state license. It stated that section 3(4) had extended Texas driving privileges to nonresidents only if they had in their immediate possession an appropriate out-of-state license and if reciprocity was "present between that State and this State as to recognition of each State's licenses." Attorney General Opinion V-980 at 3.

The 1983 amendments to article 6687b reclassified section 3(4) to section 3(e) and modified the language of the 1947 amendment to reflect the change to alphabetical licenses covering vehicles based on their weight ratings or

---

2. Our subsequent discussion of article 6687b-2 will show that the enactment of that article removed from the scope of the licensing provisions of article 6687b a significant number of vehicles used for commercial purposes. That discussion will also show that the licensing requirements of article 6687b continue to apply to some commercial vehicles.

passenger capacity. See Acts 1983, 68th Leg., ch. 345, § 2, at 1797.

Neither the provisions of House Bill 293 nor the current language of section 3(e) makes a distinction for purposes of the exemption between drivers of commercial and noncommercial vehicles. Consequently, an exemption under section 3(e) is available to a nonresident with regard to any motor vehicle currently within the scope of the licensing provisions of article 6687b, including one used for commercial purposes, but only if reciprocity is present between Texas and the nonresident's home government with regard to similar driver's licenses and the nonresident has a valid license issued to him by his home government. Furthermore, according to the current as well as past versions of the exemption, the nonresident must be 18 years of age or older.

Even assuming the Mexican drivers in issue are 18 years or older and possess appropriate Mexican licenses, you have not mentioned any reciprocal arrangement between Mexico and the United States or Texas with regard to licenses authorizing the use of motor vehicles for commercial purposes or any Mexican legislation allowing licensed Texas commercial drivers to operate their vehicles on Mexican highways without obtaining local licenses. Mexico and the United States, however, are signatories to a 1943 treaty that covers the use of certain motor vehicles in each country. That treaty, the Convention on the Regulation of Inter-American Automotive Traffic (hereinafter the Convention) was opened for signature at the Pan American Union on December 15, 1943. C. Bevans, 3 Treaties and Other International Agreements of the United States of America 1776-1949 at 865 (1969) (contains reproduction of treaty) (hereinafter "Bevans"); see also 61 Stat. 1129; T.I.A.S. No. 1567 (also contains reproductions).

The Convention facilitates the movement of motor vehicles among the American republics by agreeing to the acceptance of each individual republic's licensing of vehicle operators and registration of vehicles and providing for the recognition of international vehicle certificates and driver's licenses. Article II of the Convention defines a motor vehicle "as any self-propelled vehicle circulating upon a public highway without the need of rails and used for the transport of persons or merchandise." 3 Bevans at 866. The term "merchandise" is not defined by the Convention, although "highway" is defined "as any public way maintained for and open to the use of the public for purposes of vehicular travel." Id. The Convention does not expressly

refer to vehicles used for commercial purposes.  See H. Kelly, American Interest in International Motor Travel, XVII Dep't of State  Bull. 1063, 1066-67 (1947)  (Convention silent with regard to problem presented by trucks and buses; little expectation in  1940s of  commercial vehicle  traffic developing over long distances).

The United States signed the Convention on December 31, 1943, and  the Senate  subsequently ratified  it during  the summer of 1946.  Upon deposit of the ratification on October 29, 1946, the  treaty became  effective with  regard to  the United States.  3 Bevans at 865.

Mexico signed the treaty on April 14, 1949, with reservations, ratified it  on April 30,  1949, and deposited  its ratification on June 24, 1949.  3 Bevans at 875; Division of Law  and  Treaties,  Pan  American  Union,  Inter-American Treaties and Conventions: Signatures, Ratifications, and Deposits with Explanatory Notes 98 (1954).  Mexico's  reservations to the treaty provide:

> 1.  The approval which  the Government  of Mexico grants is  limited to  the passage  of private vehicles  which carry  their  owners, family, or friends and which are not used for purposes of profit, and

> 2.  Vehicles, destined for public  service. in  carrying  passengers  and  freight, will continue to be subject to the dispositions of Mexican legislation.

See U.S. Dep't of  State, United States Treaty  Developments (Dec. 1950) (updating T.I.A.S.  No. 1567 since December  15, 1943).  We are unaware of any subsequent change or  addition to the Convention.  We are also unaware of any United States opinion construing either the Convention or the reservations to the Convention  by Mexico.   The Convention  is still  in force between the United States and Mexico.  See U.S.  Dep't of State, Treaties in  Force; A List  of Treaties and  Other International Agreements of  the United States  in Force  on January 1, 1990 at 286.

Given Mexico's reservations to the Convention, we  conclude that the Convention does not establish an  arrangement between Mexico  and the  United States  for  the  reciprocal

recognition of commercial driver's licenses.[3] Since you have not mentioned and we have not been able to locate any other arrangement between the two countries with regard to reciprocal recognition of commercial driver's licenses or any Mexican legislation, we conclude that an exemption is not currently available under section 3(e) of article 6687b to Mexican operators who use commercial motor vehicles that are within the scope of the licensing provisions of article 6687b.

We next address your questions under the new Texas Commercial Driver's License Act, article 6687b-2, V.T.C.S. Article 6687b-2 was added by House Bill 1935 of the 71st Legislative Session, which also amended various provisions of article 6687b to reflect the new act. Acts 1989, 71st Leg., ch. 236, §§ 1, 3-8, at 1086-1100. Article 6687b-2 generally became effective April 1, 1990, the date on which the amendments to article 6687b took effect.[4]

Article 6687b-2 regulates the issuance and continuance of driver's licenses for the use of certain commercial motor vehicles. Licenses issued under article 6687b-2 are described as commercial driver's licenses and authorize individuals to drive various classes of commercial motor

---

3. Texas has had in effect since 1976 regulations providing that the reciprocal privileges described in the 1943 Convention are limited to private vehicles. See 37 T.A.C. § 15.91 (a)-(b), (d)(2) (all commercial buses, trucks and trailers are excluded). Since treaties entered into by the United States are the supreme law of the land, we base our conclusion not on these regulations but on the 1943 Convention as signed with reservations by Mexico. See U.S. Const. art. VI, cl. 2; see also Hidalgo County Appraisal Dist. v. Engfar N.V., 756 S.W.2d 754, 756 (Tex. Civ. App. - Corpus Christi 1988, no writ) (state law in conflict with United States treaties are invalid to the extent of the conflict).

4. We address your questions under article 6687b-2 solely with regard to Mexican operators of commercial motor vehicles and in light of the 1943 Convention and the reservations to that treaty filed by Mexico. Since the United States may have different arrangements with other countries concerning automotive traffic, we do not address the application of article 6687b-2 to residents of those other countries.

vehicles. V.T.C.S. art. 6687b-2, §§ 3(3), 21. Section 3(6) of the act defines "commercial motor vehicle" for purposes of article 6687b-2 as:

> [A] motor vehicle or combination of motor vehicles used to transport passengers or property if the motor vehicle:
>
> (A) has a gross combination weight rating of 26,001 or more pounds inclusive of a towed unit with a gross vehicle weight rating of more than 10,000 pounds;
>
> (B) has a gross vehicle weight rating of 26,001 or more pounds;
>
> (C) is designed to transport 16 or more passengers, including the driver; or
>
> (D) is transporting hazardous materials and is required to be placarded in accordance with 49 C.F.R. Part 172, Subpart F.

Section 21(b) of article 6687b-2, which took effect April 1, 1990, authorizes the issuance of commercial driver's licenses with Class A, B, and C classifications encompassing vehicles classified according to weight rating and passenger capacity. See also V.T.C.S. art. 6687b-2, § 3(6).

The weight ratings and passenger capacity criteria used in sections 3(6) and 21(b) of article 6687b-2 are similar to the ratings and capacity criteria used in section 4A of article 6687b. See V.T.C.S. art. 6687b, § 4(9) (resolving the overlap between the two statutes). On or after the date the Department of Public Safety (hereinafter the department) begins issuance of commercial driver's licenses under article 6687b-2, the department may not issue to drivers Class A or B licenses under article 6687b unless the drivers first provide sworn affidavits stating that the vehicles that they will thereafter drive, requiring article 6687b Class A or Class B driver's licenses, are exempted from the definition of commercial motor vehicle in article 6687b-2. Id. We understand that the department intends to begin

issuing commercial driver's licenses within the next few months.[5]

Section 11(a) of article 6687b-2 provides that the department may not generally issue a commercial driver's license to a person unless Texas is the person's state of domicile.[6] Section 3(28) defines "state of domicile" as "the state where a person has the person's true, fixed, and permanent home and principal residence and to which the person intends to return whenever absent." Section 3(27) defines "state" as a state of the United States or the District of Columbia. Thus, foreign countries are not included within the term "state."

Section 17 of article 6687b-2, however, gives the department discretionary authority to issue nonresident commercial driver's licenses. "Nonresident commercial driver's licenses" are "commercial driver's licenses" for purposes of article 6687b-2 that are issued by a state to a resident of a foreign jurisdiction. See V.T.C.S. art. 6687b-2, § 3(23); see also id. § 3(3) (defining "commercial driver's license" to include any license that authorizes the operation of

---

5. Until the department begins issuing commercial driver's licenses, an article 6687b license that is renewed which permits the driving of a commercial motor vehicle as described in article 6687b-2 continues in effect until the earlier of April 1, 1992, or the date on which the license expires or is suspended, revoked, or cancelled. April 1, 1992 is the effective date of the prohibition in section 9 of article 6687b-2 that provides a person may not drive a commercial motor vehicle covered by the new act without possession of a valid commercial driver's license. Acts 1989, 71st Leg., ch. 236, § 12, at 1101. Id. § 12(b).

6. The purpose of article 6687b-2 is to implement the federal Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. app. §§ 2701-16. V.T.C.S. art. 6687b-2, § 2. Both the federal act and the state act contemplate that a person operating a commercial motor vehicle will have only one license. See, e.g., 49 U.S.C. app. § 2701; V.T.C.S. art. 6687b-2, § 4; see also 49 C.F.R. § 383.21. Section 2708(a)(14) of the federal act requires that a state permit a qualified driver holding a commercial motor vehicle license from another state to operate commercial motor vehicles within its boundaries.

commercial motor vehicles issued in accordance with  article 6687b-2).

Section 17, which took  effect April 1, 1990,  provides that  the  department   may   issue  nonresident   commercial driver's licenses to residents of a foreign jurisdiction "if the United States Secretary of Transportation has determined that the  commercial  motor  vehicle  testing  and  licensing standards  in   the   foreign  jurisdiction  do   not   meet   the standards established in 49  C.F.R. Part 383."[7]  A  "foreign jurisdiction" is a "jurisdiction other  than a state of  the United States."  V.T.C.S. art. 6687b-2, § 3(18); see also 37 T.A.C. § 16.41 (describing Mexico as a foreign  jurisdiction for  purposes  of  article  6687b-2  and  stating  that   a nonresident  must  satisfy  certain  requirements).   Before issuing such a  license, the department  must ascertain  the practical  capacity  of  discontinuing   the  license   and disqualifying  the   person   "with  the   same   conditions applicable to  a  commercial  driver's  license issued  to  a resident of this state."   V.T.C.S. art. 6687b-2, § 17.   We are informed that  the department intends  to begin  issuing nonresident commercial driver's licenses at the same time as resident commercial driver's licenses.

The language  used  in  section 17  suggests  that  the department may  not  issue nonresident  commercial  driver's licenses unless the federal  government has issued a  formal determination that a foreign jurisdiction's standards do not satisfy federal requirements.  However, a review of all  the provisions of the act  reveal that the legislature  intended that a nonresident obtain a nonresident commercial  driver's license unless the  testing and licensing  standards of  the nonresident's jurisdiction  had been  found satisfactory  by the federal government. See  V.T.C.S. art. 6687b-2,  § 9(a) (a person may not drive a commercial motor vehicle unless he possesses a valid commercial driver's license); id. § 31(a) (mandatory recognition  by  Texas  of  certain  out-of-state

---

7.  Federal regulations,  which  take effect  April  1, 1992, require a commercial motor vehicle operator  domiciled in a foreign jurisdiction to obtain a nonresident commercial driver's  license  from  a  state  that  complies  with  the applicable federal  standards if  the Department  of  Trans- portation has determined that the jurisdiction does not have testing  and  licensing  standards  in  accordance  with  or similar to the  applicable federal  regulations.  49  C.F.R. § 383.23(b).

licenses upon recognition by federal government of issuer's standards). Unless Texas can issue nonresident commercial driver's licenses pending a determination of satisfactory standards by the federal government, nonresident operators of commercial motor vehicles may be placed in the difficult position of needing commercial driver's licenses without a means for acquiring such licenses. Given the importance of commercial traffic along Texas borders, it is doubtful the legislature intended to place nonresident operators in such a position. Thus, we construe section 17 as authorizing the issuance of nonresident commercial driver's licenses unless the federal government has determined that the standards of the nonresident's jurisdiction meet applicable federal requirements.

Section 31(a) of article 6687b-2, also effective April 1, 1990, establishes two bases for reciprocal recognition of licenses obtained outside Texas. First, a person may drive a commercial motor vehicle in Texas if he has a valid commercial driver's license or commercial driver learner's permit issued by another state in accordance with the applicable federal standards. Since section 3(3) defines commercial driver's licenses as licenses issued in accordance with article 6687b-2, the phrase as used in section 31(a) obviously refers to commercial driver's licenses as defined in and issued under other states' laws.

The federal Commercial Motor Vehicle Safety Act of 1986 anticipates that all of the states will eventually have in effect statutes similar to article 6687b-2 and will recognize commercial driver's licenses issued by other states. 49 U.S.C. app. § 2708. Federal regulations adopted under the federal act also anticipate that all states will recognize commercial driver's licenses issued by other states. 49 C.F.R. § 383.73(h).

For two reasons, we believe it is appropriate to interpret section 31(a) in light of the provisions of the federal act and regulations. First, such an interpretation effectuates the single license requirement of the state and federal commercial driver's licenses acts. See 49 U.S.C. app. § 2701; V.T.C.S. art. 6687b-2, § 4(a). Second, that interpretation enhances the effectiveness of the nationwide information system that the federal act establishes for purposes of tracking the driving record of all commercial drivers. See, e.g., 49 U.S.C. app. § 2706 (computerized system for licensing and disqualification of commercial drivers based on possession of single licenses). Thus, we conclude that if a Mexican operator of a commercial motor vehicle as defined in article 6687b-2 obtains a nonresident

commercial driver's license from another state, that license is entitled to recognition in Texas in accordance with section 31(a), and that operator is not required to obtain a Texas nonresident commercial driver's license.

Section 31(a) also provides that a person may drive a commercial motor vehicle as defined by article 6687b-2 in Texas if that person has a valid commercial driver's license issued by a foreign jurisdiction for which the United States Department of Transportation has made a determination that the jurisdiction's testing and licensing standards satisfy certain federal requirements.[8] While we have confirmed that the federal government has determined that Canada's standards satisfy the applicable requirements, we are not aware of such a determination with regard to Mexico's standards. See 49 C.F.R. § 383.23(b) n.1 (effective December 29, 1988, certain Canadian licenses accepted instead of nonresident commercial licenses in accordance with single license requirement); see also 53 Fed. Reg. 27634 (July 21, 1988) (Mexican standards undergoing analysis).

Until the federal government makes a determination that the testing and licensing standards of Mexico satisfy the applicable federal requirements, a Mexican operator of a commercial motor vehicle as defined in article 6687b-2 must obtain a driver's license as required by state law. Prior to the department's issuance of commercial driver's licenses, including nonresident commercial driver's licenses, a Mexican resident may operate a commercial motor vehicle as defined in article 6687b-2 if he has either a

---

8. According to section 31(a) the following conditions must also be satisfied:

(1) the person's license or permit [issued by the foreign jurisdiction] is appropriate for the class of vehicle being driven and is not suspended, revoked, or canceled;

(2) the person is not disqualified from driving a commercial motor vehicle or subject to an out-of-service order; and

(3) the person has not been domiciled in this state for more than 30 days.

license appropriate for the class of vehicle being driven that is issued in accordance with article 6687b or a nonresident commercial driver's license issued by another state that is entitled to recognition in Texas in accordance with section 31(a). After the date on which the department begins issuance of nonresident commercial driver's licenses, a Mexican operator of a vehicle within the scope of article 6687b-2 must possess either a nonresident commercial driver's license issued by Texas or one issued by another state that is entitled to recognition in Texas. If a Mexican operator of commercial motor vehicles as defined in article 6687b-2 acquires a license under article 6687b before the department begins issuance of nonresident commercial driver's licenses, he may continue to use that license until it expires or is suspended, revoked, or cancelled.

## S U M M A R Y

Absent a reciprocal arrangement between Mexico and Texas or the United States for the recognition of commercial driver's licenses or any Mexican legislation allowing licensed Texas commercial drivers to operate their vehicles on Mexican highways without obtaining local licenses, an exemption under section 3(e) of article 6687b is not available from that act's licensing provisions for Mexican operators of motor vehicles within the scope of article 6687b that are used for commercial purposes. Thus, Mexican operators of such vehicles must obtain licenses in accordance with article 6687b.

Until the federal government determines that Mexico's testing and licensing standards satisfy applicable federal requirements, a Mexican operator of a commercial motor vehicle within the scope of the Texas Commercial Driver's License Act, V.T.C.S. article 6687b-2, must obtain a Texas driver's license as required by state law. Until the Department of Public Safety begins issuance of nonresident commercial driver's licenses under article 6687b-2, such an operator should obtain a license appropriate for the class of vehicles being driven that is issued in accordance with article 6687b or a nonresident commercial driver's license issued by another state that is entitled to

recognition in Texas in accordance with
section 31(a) of article 6687b-2. After the
date on which the department begins issuance
of nonresident commercial driver's licenses,
such an operator must possess either a
nonresident commercial driver's license
issued by Texas or by another state that is
entitled to recognition in Texas. However,
if a Mexican operator acquires a license
under article 6687b before that date, he may
continue to use that license until it expires
or is suspended, revoked, or cancelled.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Celeste A. Baker
Assistant Attorney General